1   Adam Brezine (CA Bar No. 220852)
    HOLME ROBERTS & OWEN LLP
2   560 Mission St.
3   25th Floor
    San Francisco, CA  94105
4   Telephone:  (415) 268-2000
    Facsimile:   (415) 268-1999
5   *adam.brezine@hro.com*

6
    Attorneys for Defendants
7   Fan Action Inc. and Robert Firth

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  **Razoreye Media Group, Ltd.**, a British Virgin    CASE NO. 08-1296-EDL
    Islands corporation,
12                                                      **DECLARATION OF MICHELLE
13                  Plaintiff,                          HAMILTON IN SUPPORT OF
                                                        DEFENDANTS' MOTION TO DISMISS
14          v.                                          FOR IMPROPER VENUE OR
                                                        ALTERNATIVE MOTION TO TRANSFER**
15  **Fan Action, Inc.**, an Indiana corporation, d/b/a
    Blue & Gold Illustrated, d/b/a Blue & Gold         **Date:  April 29, 2008
16  Traditions; and **Robert Firth**, an individual,   Time:  9:00 a.m.
17                                                      Place:  Courtroom E, 15th Floor**
                    Defendants.
18

19  I, MICHELLE HAMILTON, DECLARE AS FOLLOWS:

20          1.      I am the Director of Operations for Fan Action, Inc. ("Fan Action"), defendant in this

21  case.  The other defendant – Robert Firth – is the President of Fan Action, and my direct superior.  I

22  make this declaration in support of the defendants' motion to dismiss this action for improper venue

23  based on the forum selection clause in the March 2006 contract ("Contract") entered between Fan

24  Action and the plaintiff Razoreye Media Group, Ltd. ("Razoreye"), or alternative motion to transfer

25  this case to the Northern District of Indiana. A copy of the Complaint served on Fan Action in this

26  matter is attached to this declaration as Ex. A.  The Contract is attached to the Complaint.

27          2.      As Director of Operations for Fan Action, I am responsible for managing Fan Action

28  employees and overseeing all office operations.  As part of my job responsibilities, I am familiar

                                                  1
                    Hamilton Declaration in Support of Motion to Dismiss or Transfer
                    *Razoreye Media Group, Ltd. v. Fan Action, Inc. and Robert Firth*
                                    Case No. 08-1296-EDL

#36371 v1

1  with the location and organization of our corporate records and documents, including records

2  pertaining to the revenue generated by Fan Action's businesses.  As discussed more fully below, I

3  am also familiar with the history of the relationship between Fan Action and the plaintiff in this case,

4  and I took part in the negotiations that led to the Contract.

5       3.      Fan Action is an Indiana corporation with its principal place of business in

6  Mishawaka, Indiana.  Mishawaka is in St. Joseph County, Indiana, just east of South Bend and the

7  University of Notre Dame.

8       4.      Among other things, Fan Action operates the website located at

9  *www.BlueandGold.com*, and the print publication Blue & Gold Illustrated (collectively, "Blue &

10  Gold").  Blue & Gold has been in print since 1981, and has had an Internet publication since 2000.

11  Blue & Gold offers subscribers news about the football program at the University of Notre Dame, as

12  well as news about other Notre Dame sports.  Through a related catalog business, Blue & Gold also

13  sells Notre Dame-licensed merchandise and memorabilia.

14       5.      Fan Action does not have any operations or offices in California, and Fan Action's

15  contacts with California are primarily limited to its subscribers and customers there.  Neither Fan

16  Action nor Robert Firth has had any business "contacts" or dealings with California or California

17  residents related to the Contract.

18       6.      Robert Firth lives in Granger, Indiana (also in St. Joseph County), and is the President

19  of Fan Action.  With me, he took part in the negotiation of the Contract on behalf of Fan Action.  We

20  were the two individuals representing Fan Action principally involved in the relationship with

21  Razoreye.

22       7.      Fan Action and Razoreye entered the Contract to allow Fan Action to purchase the

23  assets of the business known as "*IrishToday*," a publication located at the Internet domain name

24  *www.IrishToday.com*.  Until approximately 2004-2005, it is my understanding that *IrishToday* was

25  operated by two individuals residing in Elkhart, Indiana – a town just east of Mishawaka, and also

26  close to Notre Dame.  My understanding is that they had operated *IrishToday* for about seven years.

27  Like Blue & Gold, *IrishToday* offered its subscribers news about the Notre Dame football program,

28

Hamilton Declaration in Support of Motion to Dismiss or Transfer
***Razoreye Media Group, Ltd. v. Fan Action, Inc. and Robert Firth***
Case No. 08-1296-EDL

#36371 v1

1  but by emails. *IrishToday* did not have a print publication, had not been in business as long as Blue

2  & Gold, and does not offer memorabilia and apparel sales.

3      8.    In approximately 2004-2005, the previous owners of *IrishToday* sold the business to

4  Razoreye. Razoreye operated the business for about 1-2 years, and in October, 2005, Razoreye

5  contacted Blue & Gold about potentially selling the *IrishToday* business. In March, 2006, Fan

6  Action and Razoreye entered the Contract to transfer the *IrishToday* business to Fan Action.

7      9.    When we negotiated the Contract, we were physically present in Indiana. Razoreye

8  and its representatives – primarily Craig Basaraba – routinely contacted us in Indiana to negotiate

9  and close the deal. To my knowledge, Razoreye's representatives were, at the time, located in

10  Bellingham, Washington.

11     10.   At the time we entered the Contract, the writers working for *IrishToday* were

12  principally individuals residing in Indiana. To my knowledge, *IrishToday* had no employees or

13  operations in California.

14     11.   I understand from the Complaint in this case that Razoreye claims that Fan Action has

15  breached the Contract, and that Robert Firth intentionally made false statements to Razoreye in

16  connection with the Contract negotiations. I further understand that Razoreye claims to be entitled

17  to certain revenue-sharing payments under the Contract, which are based on certain revenue

18  generated by Blue & Gold in the 12 months following the date we entered the Contract.

19     12.   I have reviewed the Complaint, and while I do not know what documents and

20  information the other side will seek in this case, if the documents sought in discovery are documents

21  related to the negotiation of the Contract, and the revenue generated by Blue & Gold under the

22  Contract after the sale, those documents and records are located in Indiana, at Fan Action's

23  headquarters. Fan Action does not keep records or offices in California. To my knowledge, none of

24  those documents – for any party – are located in California.

25     13.   My review of the Complaint, and personal knowledge of the history of the

26  relationship between Fan Action and Razoreye, suggests to me that the key third-party witnesses

27  would include (a) the individuals from whom Razoreye bought *www.IrishToday.com*, who are to the

28  best of my knowledge still located in Elkhart, Indiana; and (b) former employees of

3

Hamilton Declaration in Support of Motion to Dismiss or Transfer
*Razoreye Media Group, Ltd. v. Fan Action, Inc. and Robert Firth*
Case No. 08-1296-EDL

#36371 v1

1  *www.IrishToday.com*, who are also located primarily in Northern Indiana. There is also at least one

2  former Blue & Gold employee – Steve Bishko – who was the Chief Information Officer during the

3  period following the Contract – who is now located in Northern Indiana, and who is likely to be

4  deposed in this case. I am unaware of any potentially relevant witness that is located in the Northern

5  District of California (or anywhere in California, for that matter).

6      14.     If this case is transferred to Indiana, employees and representatives of Fan Action and

7  Robert Firth, and their counsel, will not have to travel to attend depositions, trial, or court

8  appearances. If, however, this case continues in the Northern District of California, we would be

9  forced to travel to San Francisco for trial, which would constitute a real hardship for us, as we are a

10  small business, and cannot spare corporate representatives to routinely travel to California to attend

11  to legal matters, or to attend trial.

12      15.     It would be less expensive to pay lawyers if this case were in Indiana. In our

13  experience, attorneys' fees in the area around St. Joseph County, Indiana, are approximately $125 -

14  $225 per hour.

15  *I declare under penalty of perjury that the foregoing is true and correct.*

16  *Dated: March 24, 2008*

17

18      Michelle DeLee Hamilton

19

20

21

22

23

24

25

26

27

28

Hamilton Declaration in Support of Motion to Dismiss or Transfer
*Razoreye Media Group, Ltd. v. Fan Action, Inc. and Robert Firth*
Case No. 08-1296-EDL

#36371 v1

# EXHIBIT A

1  **KRONENBERGER BURGOYNE, LLP**
   Karl S. Kronenberger (Bar No. 226112)

2  Jeffrey M. Rosenfeld (Bar No. 222187)
   150 Post Street, Suite 520

3  San Francisco, CA 94108
   Telephone:  (415) 955-1155

4  Facsimile:  (415) 955-1158

5  Attorneys for Plaintiff Razoreye
   Media Group, Ltd.

6



ENDORSED
F I L E D
San Francisco County Superior Court

FEB 1 2008

CASE MANAGEMENT CONFERENCE SET, Clerk

JUL 3 2008 - 9:00 AM

7

8          **COURT OF THE STATE OF CALIFORNIA**
                **COUNTY OF SAN FRANCISCO**

9

10

11

12  Razoreye Media Group, Ltd, a British
    Virgin Islands corporation,

13          Plaintiff,

14      v.

15  Fan Action, Inc.,  an Indiana corporation,
    *dba* Blue & Gold Illustrated, *dba* Blue &

16  Gold Traditions; Robert Firth, an
    individual,

17          Defendants:

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 08-471698

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** BY FAX

**JURY TRIAL DEMANDED**

*(left margin, vertical)* KRONENBERGER BURGOYNE, LLP · 150 Post Street, Suite 520 · San Francisco, CA 94108 · www.KronenbergerLaw.com

1          **COMPLAINT FOR DAMAGES AND
             INJUNCTIVE RELIEF**

Plaintiff, Razoreye Media Group, Ltd. ("Razoreye") brings this Complaint against Defendants Fan Action, Inc. and Robert Firth (collectively, "Defendants").

## INTRODUCTION

1.      Before March 30, 2006, Plaintiff owned and operated the Internet website located at www.IrishToday.com ("Irish Today"). Irish today served as a news forum dedicated to covering the University of Notre Dame's ("Notre Dame") football program and recruiting efforts, and Plaintiff used the IRISH trademark in its business pursuant to a license from Notre Dame.

2.      Fan Action, Inc. ("Fan Action") operated and continues to operate a similar website, located at www.BlueAndGold.com ("Blue and Gold"), which is also dedicated to covering Notre Dame's football program and recruiting efforts.

3,      On March 30, 2006, Plaintiff entered into a valid written contract with Fan Action whereby Plaintiff agreed to sell all of its rights in Irish Today to Fan Action for valuable consideration (the "Contract").

4.      Under the terms of the Contract, in addition to paying Plaintiff $40,000, Fan Action agreed, for a period of twelve months from the date of the Contract, to pay Plaintiff 50% of the gross revenue generated from existing and new business related to both Irish Today and Blue and Gold (after recouping of a $10,000 pre-payment).

5.      As part of this deal, Fan Action agreed to maintain, market, and promote Irish Today and maximize its revenue.

6.      Despite these representations to Plaintiff, Fan Action and its President, Robert Firth ("Firth"), had no intention of making these payments or maintaining Irish Today. In material breach of the Contract, Fan Action has abandoned Irish Today and refused to pay to Plaintiff any of Plaintiff's portion of the gross revenue due to Plaintiff under the Contract.

COMPLAINT FOR DAMAGES AND
                                    INJUNCTIVE RELIEF

## PARTIES AND JURISDICTION

7.    Plaintiff, Razoreye Media Group, Ltd is a British Virgin Islands corporation in good standing with its principal place of business at 8345 NW 66th St., No. 9819, Miami, Florida, 33166.

8.    Defendant, Fan Action, Inc. is an active, for-profit Indiana corporation, with its principal place of business at 1605 N. Home Street, Mishawaka, IN 46545.

9.    Defendant, Robert Firth, is an individual residing in Mishawaka, Indiana. Firth is the President of Fan Action and negotiated the Contract on behalf of Fan Action.

10.    In the Contract, Plaintiff and Fan Action agreed that Plaintiff, in its sole discretion, could seek injunctive relief in any venue for disputes arising from the Contract, including the Superior Court for San Francisco County.

11.    Additionally, on information and belief, both Irish Today and Blue and Gold have had and continue to have active subscribers residing in California, which account for a significant portion of their revenue.

## GENERAL ALLEGATIONS

12.    Before March 30, 2006 (the "Contract Date"), Irish Today was a leading website dedicated to covering the Notre Dame football program. Irish Today maintained a subscriber base of over 800 active subscribers, the vast majority of which subscribed to Irish Today on an annual basis.

13.    Irish Today generated revenue and profits from subscription fees. Prior to the Contract Date, Irish Today charged its subscribers $99.95 for a one year subscription to the Irish Today website.

14.    Since 1997, Defendant Fan Action has offered consumers a rival publication, Blue and Gold. Like Irish Today, Blue and Gold offers paying subscribers access to news about Notre Dame's football program.

15.    Blue and Gold generates revenue through electronic website memberships,

3    COMPLAINT FOR DAMAGES AND
         INJUNCTIVE RELIEF

but also through its distribution of a printed publication ($91.95 for a one year subscription or $178.75 for a two year subscription), as well as from apparel and sports memorabilia sales.

16.    Prior to the Contract Date, Defendant Firth, the President of Fan Action, approached Plaintiff about purchasing Irish Today.

17.    During these negotiations, Firth and his agent—Michelle Hamilton— represented to Craig Basaraba ("Basaraba"), Director of Operations for Razoreye, that: a) Irish Today was a competitor of Blue and Gold; b) Fan Action wished to purchase Irish Today and to operate Irish Today along with Blue and Gold; c) that Irish Today and Blue and Gold would benefit from the cross-promotion; and d) as compensation for the purchase of Irish Today, Fan Action would pay to Razoreye, on a prospective basis, a percentage of Blue and Gold's revenue of both Irish Today subscribers and new Blue and Gold subscribers.

18.    Firth also represented to Basaraba that Fan Action would implement tracking software to track what revenue was generated by which customers, so that the revenue could be properly distributed between Fan Action and Plaintiff.

19.    In actuality, Firth had no intention of fulfilling these obligations or implementing the tracking software, and Firth's statements constituted out-right misrepresentations, made with the intention of enticing Plaintiff to sell Irish Today to Fan Action.

20.    Basaraba, who was negotiating the Contract on behalf of Plaintiff, listened to and relied upon Firth's representations in deciding to enter into the Contract. Based on Firth's representations, Basaraba believed that Razoreye could generate significant compensation under the Contract. Based on Firth's representations, Plaintiff believed that a large number of Irish Today subscribers would also subscribe to Blue and Gold, thus generating significant new customer revenue, of which Plaintiff would be entitled to 50 percent if Plaintiff sold Irish Today to Fan Action. Based on Firth's representations,

4

Plaintiff also believed that Irish Today's membership would grow, as a result of the promised cross-promotion, marketing, and revenue maximizing, again accounting for additional revenue of which Plaintiff would be entitled to 50 percent.   But for Firth's representations, Basaraba would not have agreed to enter into the Contract on behalf of Razoreye.

21.   On March 30, 2006, Plaintiff and Fan Action entered the Contract, which was a valid contract titled Asset Sale & Purchase Agreement.   A copy of the executed version of the Contract is attached hereto as Exhibit A, and incorporated herein by reference.

22.   Under the terms of the Contract, Plaintiff sold Irish Today to Fan Action for valuable consideration, including: a) $30,000 upon execution of the Contract, b) as partial prepayment of a future gross revenue share, $10,000 upon transfer of control of the Irish Today subscriber database and of the digital assets of Irish Today, and c) a fifty (50%) percent share of Blue and Gold's gross revenue for a period of 12 months.

23.   The fifty (50%) percent gross revenue share that Plaintiff was entitled to receive under the Contract—less the partial prepayment of $10,000—derived from: a) existing customers of Irish Today who were not already subscribers of Blue and Gold, b) any new subscribers or renewals to either Irish Today, and c) any new subscribers to Blue and Gold after the Contract Date.

24.   As part of the Contract, Fan Action represented and warranted that it would "execute all reasonable efforts to market and promote the Business [Irish Today] and its related products, as well as to ensure adequate gross revenue share payments to Seller in a timely manner."

25.   Shortly after the Contract had been executed, Fan Action completely abandoned the publication of Irish Today, integrating its content into Blue and Gold, and forcing its subscriber base to switch to Blue and Gold.   As a consequence, and despite Plaintiff's oral and written requests, Fan Action has not taken any efforts to market and

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1    promote Irish Today.

2        26.    On information and belief, despite Plaintiff's oral and written requests, Fan

3    Action has refused to install and integrate the tracking software required in order

4    calculate the gross revenue share payable to Plaintiff under the Contract.

5        27.    Despite Plaintiff's several oral and written requests, Fan Action has refused

6    to provide an accounting of its revenue, and has refused to provide a breakdown of its

7    revenue segregated by the category of subscriber (e.g. existing Blue and Gold

8    subscribers v. existing Irish Today subscribers v. new Irish Today subscribers).

9        28.    Despite Plaintiff's several oral and written requests, Fan Action has refused

10   to make any payments based on Blue and Gold's and Irish Today's gross revenue, as

11   required under the Contract.

12

13                        **FIRST CAUSE OF ACTION**

14                   **Promissory Fraud against Robert Firth**

15       29.    Plaintiff re-alleges and incorporates herein the above paragraphs 1-28.

16       30.    Firth represented to Plaintiff that if Plaintiff sold Irish Today to Fan Action,

17   Fan Action would operate Irish Today alongside Blue and Gold and would make

18   reasonable efforts to market and promote Irish Today and maximize its revenue.

19       31.    Firth represented to Plaintiff that if Plaintiff sold Irish Today to Fan Action,

20   Fan Action would pay to Plaintiff a significant portion of the combined prospective gross

21   revenue of Irish Today and Blue and Gold.

22       32.    Firth represented to Plaintiff that if Plaintiff sold Irish Today to Fan Action,

23   Fan Action would install tracking software to monitor and distribute how much revenue

24   was generated by new and existing Irish Today customers and by new Blue and Gold

25   customers.

26       33.    Firth knew that his statements were false at the time he made them. Firth

27   had no intention of marketing and promoting Irish Today; Firth had no intention of

28

**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF**

installing tracking software; and Firth had no intention of paying Plaintiff a portion of Blue and Gold's or Irish Today's prospective gross revenue.

34.    Firth made these misrepresentations to Plaintiff and Plaintiff's employee in order to induce Plaintiff to sell Irish Today to Fan Action.

35.    Plaintiff and Plaintiff's employee relied upon Firth's misrepresentations in deciding to enter into the Contract, because Plaintiff anticipated that Blue and Gold's prospective gross revenue after the execution of the Contract would be significant and would justify the sale.

36.    Firth's misrepresentations were reprehensible, fraudulent, and in blatant disregard for public policy favoring free contracting among businesses.

37.    As a direct result of Firth's misrepresentations, Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION

### Breach of Written Contract against Fan Action

38.    Plaintiff re-alleges and incorporates herein the above paragraphs 1-28.

39.    On March 30, 2006 Plaintiff and Fan Action agreed to and executed a valid and unambiguous contract.

40.    The Contract was supported by valuable consideration.

41.    Plaintiff has fulfilled its obligations under the Contract.

42.    Fan Action has materially breached the Contract, including by: a) failing to make any payment of a portion of its gross revenue to Plaintiff, as required under Section 3(c) of the Contract; b) failing to provide any accounting of its revenue, as necessary under Section 6 of the Contract; and c) failing to execute all reasonable efforts to market and promote the Irish Today business and its related products, as required under Section 6 of the Contract.

43.    As a result of Fan Action's breaches, Plaintiff has suffered damages.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every cause of action set forth above and award it relief including, but not limited to, the following:

1.  Injunctive relief against Fan Action, in the form of, but not limited to, an order requiring Fan Action to produce quarterly accounts for a twelve month period beginning on March 30, 2006;

2.  An award of compensatory damages against Defendants in an amount to be determined at trial;

3.  An award of exemplary damages against Firth, in an amount to be determined at trial, to serve as a punishment and deterrent in light of Firth's substantial wrongful acts;

4.  An award of pre- and post-judgment interest on all damages;

5.  An award of reasonable costs and attorneys' fees incurred by Plaintiff in connection with litigation concerning Defendants' wrongful acts as alleged herein; and

6.  Such other further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Respectfully Submitted,

DATED: January 29, 2008                    KRONENBERGER BURGOYNE, LLP



By: _____

Karl S. Kronenberger
Attorney for Plaintiff Razoreye Media
Group, Ltd.

8                    COMPLAINT FOR DAMAGES AND
                     INJUNCTIVE RELIEF

1

2

## DEMAND FOR JURY TRIAL

3

Plaintiff hereby demands a trial by jury of all issues so triable in this action.

4

5

Respectfully Submitted,

6

7

DATED: January 29, 2008

8

9

KRONENBERGER BURGOYNE, LLP

By: _____

10

Karl S. Kronenberger

11

12

Attorney for Plaintiff Razoreye Media Group, Ltd.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# Exhibit A

Dec 19 07 09:46a    Craig Basaraba        250-483-4..7        P.1
 Mar 31 06 08:00a    Craig Basaraba        250-483-4717       P.2
   Mar 30 06 04:57p    Blue&Gold Illustrated    5742559700     P.2

## ASSET SALE & PURCHASE AGREEMENT

This asset sale and purchase agreement ("Agreement") is entered into as of March 30, 2006 between Fan Action, Inc., 1605 N. Home Street, Mishawaka, IN 46545 ("Buyer"), and Razoreye Media Group, Ltd., 4152 Meridian St. PMB #105 - 435, Bellingham, WA 98226 ("Seller") (Buyer and Seller, collectively, the "Parties"). Each of the owners of Seller ("Owners") have joined in this Agreement for the purpose of guaranteeing to Buyer the performance of Seller's obligations hereunder and agreeing to observe the covenants set forth in Section 2 hereof.

WHEREAS, the Buyer desires to purchase and Seller agrees to sell assets, as detailed in Exhibit A ("Assets").

WHEREAS, the Parties desire to enter into an Agreement detailing the terms of the sale of such assets from Seller to Buyer;

The Parties hereby agree as follows:

1.    Sale of Assets:  Subject to the terms and conditions in this Agreement, Seller hereby sells, assigns, transfers, conveys, and delivers to Buyer, and Buyer hereby purchases, all of the following: Seller's tangible and intangible property, wherever located, including all unknown and contingent rights in the business commonly referred to as "IrishToday.com", found at www.IrishToday.com, further described in Exhibit A (hereinafter, the "Business"); Seller's goodwill, insurance and other contract benefits, domain name, website, inventories, accounts receivable, and all other assets as used in the Business, any and all other assets associated with the Business, to include assets contained in the complete and accurate list of all of Business assets in Exhibit A. Upon the execution of this instrument, Seller will thereby vest in Buyer good and marketable title to said assets, free and clear of any and all liens, charges and encumbrances.

2.    Transfer of Intellectual Property. Seller hereby assigns and conveys to Buyer, all worldwide right, title and interest in and to certain works developed, created, invented, conceived, reduced to practice, or authored, either solely or jointly with others, with respect to the assets as described in Exhibit A, to include the domain name, website, other licenses, web development, software development, design work, engineering work and/or computer software characters, artwork, programs and documentation known as the IrishToday.com and found at www.IrishToday.com, and any modifications, amendments, translations, upgrades, updates, enhancements, derivative works and any other changes to or attendant to the assets contained in Exhibit A, including worldwide trademark, copyright, trade secret, patent and all other proprietary rights (collectively, the "Works"). Seller shall provide Buyer with all materials or information prepared by Seller related to the assets in Exhibit A and the Business, retaining no copies thereof without the prior written consent of Buyer. Seller additionally agrees to destroy any digital copies of databases, computer code or other intellectual property of the Business after Seller confirms the successful transfer of such intellectual property to Buyer. Furthermore, Seller agrees to memorialize further this assignment by signing the assignment transfer document that is attached to this Agreement.

_____ Buyer
_____ Seller

- 1/13 -

Dec 19 07 09:46a    Craig Basaraba        250-483-4717        p.2
Mar. 31 06 08:01a   Craig Basaraba        250-483-4717        p.3
Mar 30 06 04:58p    BlueNGold Illustrated 5742558700         P.3

3.    Purchase Price & Payments.  In consideration of the sale and transfer to Buyer by Seller of all the acquired assets of the Business, as provided above, Buyer hereby agrees to make payment of as follows and subject to the stated factors below:

a.    Upon execution of this agreement, Buyer shall make payment to Seller in the amount of $30,000, by certified check sent via courier or international wire transfer payable to Razoreye Media Group, Ltd.

b.    Upon receiving FTP information for access to the HTML, text and subscriber data files residing at www.irishtoday.com, Buyer shall make an additional payment to Seller in the amount of $10,000, by certified check sent via courier or international wire transfer payable to Razoreye Media Group, Ltd. This amount shall be considered a partial prepayment of monies calculated according to Section 3c.

c.    For each three months after the Effective Date, until twelve months from the Effective Date, Buyer shall pay to Seller 50% of the gross revenue generated by the Business, less the partial prepayments as detailed in 3.b above. The revenue sources to be included in gross revenue under this paragraph are: a) derived from the unique Irish Today names (names not already on Blue & Gold database), and b) after the Effective Date, any new subscribers or renewals to irishtoday.com; and any new subscribers to blueandgold.com. Payments shall be made by certified check or international wire transfer payable to Razoreye Media Group Ltd. within ten (10) business days after the end of each three-month period.

4.    Liabilities, Bulk Sales Law, and Sales Tax.  Except as otherwise expressly provided in this Agreement, Buyer is not assuming any of Seller's liabilities or obligations, and Seller agrees to pay and discharge all of its liabilities and obligations promptly as due and in due course.  Buyer hereby assumes the contractual obligations of the Seller to provide subscription content to current subscription customers of the Business (to the extent the subscribers are named in the list provided by Seller), pursuant to the terms and conditions between the Business and its subscription customers (as disclosed by Seller to Buyer). Buyer waives compliance with the requirements of the bulk sales law as provided in the Uniform Commercial Code, but retains all of its rights and defenses.

5.    Seller's Representations, Warranties, and Covenants.  Seller represents, warrants, and covenants to Buyer as follows:

a.    Approval, Authority, and Ownership.  All approvals required for Seller to enter into this Agreement and sell its assets have been duly obtained, and Seller has full power, authority, and ownership to enter into this Agreement and to effectuate all of the transactions contemplated, without any conflict with any other restrictions or limitations imposed by any law, legal requirement, agreement, or otherwise.  Seller warrants that Seller is the sole owner of IrishToday.com and www.IrishToday.com, and Seller may enter this agreement on behalf of IrishToday.com and www.IrishToday.com without the approval of any other person or entity.

b.    Condition of Assets.  All of the assets transferred under this Agreement, including any and all web applications and web programming, are in



Buyer
Seller

- 2/13 -

good condition and repair and are fit for the particular purposes for which they are intended to be used; all accounts, notes, and other receivables, to Seller's knowledge as of the date of this Agreement, are fully collectible when due and payable; and all of Seller's intangible rights, as of the date of this Agreement, are solely and exclusively owned by Seller without any infringement on any rights of others. Neither the names of current and past subscribers of the Business, information regarding those subscribers or any list of subscribers have been traded or sold by Seller.

    c.    **Existing Relationships.**  Seller does not know of any plan or intention of any of Seller's employees, partners, independent contractors, affiliates, marketing partners, vendors, or customers to sever relationships or existing contracts with Seller or to take any other action that would adversely affect the business of Seller.

    d.    **Claims and Litigation.**  There are no lawsuits, threats of litigation, claims, or other demands affecting or involving Seller or the Business, arising or accruing before the date of this Agreement, that may become a liability or obligation of Buyer or adversely affect its conduct of the business involving the assets purchased under this Agreement.

    e.    **Seller's Knowledge and Disclosure.**  Seller does not know, or have reason to know, of any matters, occurrences, or other information that has not been disclosed to Buyer and that would materially and adversely affect the assets purchased by Buyer or its conduct of the business involving such assets.

    f.    **Seller Covenants.**  Seller agrees and covenants as follows:

    i)    **Confidentiality & Nondisclosure.**  Seller and each Owner acknowledges that the existence and contents of this Agreement and all negotiations relating to the Agreement are confidential information ("Confidential Information"). Seller and each Owner also agrees that the following information relating to the Business shall be deemed Confidential Information: All business strategies, financial condition, business plans, data, business records, customer lists, any and all information concerning the Business current, future or proposed offerings, including, but not limited to, unpublished computer code (both source code and object code), drawings, specifications, notebook entries, technical notes and graphs, computer printouts, technical memoranda and correspondence (written, e-mail or phone conversations); product development agreements and related agreements.

    Seller and each Owner agrees that it will not disclose Confidential Information to any third party. Seller may, however, disclose information if required by law or court order, provided that Seller gives Buyer prior written notice and makes good faith best efforts to obtain confidential treatment for such Confidential Information.

    ii)    **Cooperation.**  Seller and each Owner agrees to cooperate with Buyer, and on Buyer's reasonable request, to execute all documents and take all actions as reasonably necessary to perfect and implement Buyer's full ownership of the assets of Seller

    Buyer

    Seller

purchased under this Agreement, to protect the good will transferred, and to prevent any disruption of Buyer's business relating to any of Seller's employees, editor, writers, partners, suppliers, customers, or other business relationships.

(d)    Non-solicitation. Seller and each Owner agree for a period of five (5) years (a) to refer all inquiries related to the Business to Buyer, (b) not to solicit any current or past subscriber of the Business for any commercial activity (such as subscriptions or merchandise sales) and (c) not to compete with the Business as currently conducted.

6.    Buyer's Representations, Warranties, and Covenants. Buyer represents and warrants that it has full authority and approval to enter into this Agreement and to effect all of the transactions contemplated to be performed by Buyer in this Agreement, and covenants that it will make all payments and perform all such actions as required of it by this Agreement. Buyer further represents and warrants that it will execute all reasonable efforts to market and promote the Business and its related products, as well as to ensure adequate gross revenue share payments to Seller in a timely manner.

7.    Indemnity. Buyer will defend and indemnify Seller, and hold the Seller harmless from, any and all claims, liability, damages, losses, expenses and costs (including, but not limited to, reasonable attorneys' fees) resulting from, arising out of, or alleging facts i) that would constitute a breach of any warranties, representations, or obligations contained in this Agreement, ii) any violation or alleged violation of any state or federal law subsequent to the Effective Date of this Agreement, relating to the Business overall but specifically including alleged violations of state and federal anti-spam laws, and iii) any allegations from the University of Notre Dame arising after the Effective Date relating to the use of the word "Irish." Seller will defend and indemnify Buyer, and hold the Buyer harmless from, any and all claims, liability, damages, losses, expenses and costs (including, but not limited to, reasonable attorney's fees) resulting from, arising out of, or alleging facts i) that would constitute a breach of any warranties, representations, or obligations contained in this Agreement, ii) any obligation relating to the conduct of the Business during periods prior to the Effective Date of the Agreement. Seller and Buyer will each provide reasonable cooperation to the other in defense of claims and reserves the right to control any such defense in the event that they receive an opinion of counsel that the indemnifying party is not effectively protecting the other's rights and the indemnifying party does not after thirty (30) days notice of that opinion, take action reasonably requested to protect its rights.

8.    Transition Assistance. Seller will assist Buyer in transitioning the technical content and systems, all data stored on Seller's webserver, hosting company relationships, relationships with freelancers, customer service requirements, as well as any other assistance that is required for a successful transition to Buyer. Seller's contact information for the purpose of transition assistance is: craig@razoreye.com. In addition to the above obligations, Seller agrees to the following specific transition assistance obligations:

a)    From the Effective Date through the end of a 2-week period, Seller shall provide Buyer with assistance and training regarding newsletter delivery.



Buyer

Seller

- 4113 -

1)   Seller shall give Buyer a complete briefing on the operational procedures of www.IrishToday.com, and all other operations listed in Exhibit A.

9.   Severability.  If for any reason a court of competent jurisdiction finds any provision or portion of this Agreement to be unenforceable, that provision of the Agreement will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this Agreement will continue in full force and effect.

10.   No Agency.  The Parties are independent contractors and will have no power or authority to assume or create any obligation or responsibility on behalf of each other.  This Agreement will not be construed to create or imply any partnership, agency, or joint venture.

11.   Governing Law; Jurisdiction.  This Agreement shall be governed by the laws of the state of Indiana without giving effect to provisions related to choice of laws or conflict of laws.  Venue and jurisdiction of any lawsuit involving this Agreement shall exist exclusively i) in state and federal courts in or near St. Joseph County, Indiana, for any action brought by Seller or Owners, and ii) in state and federal courts in or near San Francisco County, California, for any action brought by Buyer, unless injunctive relief is being enforced by Buyer or Seller, and, according to Seller's sole discretion, such relief may not be effective unless enforced in another venue.

12.   Notices.  All notices or other communications shall be in writing and shall be personally delivered or, if mailed, sent to the following relevant address or to such other address as the recipient party may have indicated to the sending party in writing:

IF TO SELLER:     Craig Basaraba
                  Razoreye Media Group, Ltd.
                  4152 Meridian St. PMB 435 - #105
                  Bellingham, WA 98226

IF TO BUYER:      Bob Firth
                  Fan Action, Inc.
                  1605 N. Home Street
                  Mishawaka, IN 46545

13.   Opportunity to Consult with Counsel.  The Parties acknowledge that they have read this Agreement, freely and voluntarily agree to all its terms and conditions, and have independently evaluated the desirability of entering into this Agreement.  Each Party acknowledges that it has consulted, or has had ample opportunity to consult, legal counsel regarding this Agreement and each and every provision of this Agreement.

14.   Supersede.  This Agreement supersedes all previous agreements between the Parties, contains the whole of the Agreement between the Parties, and may not be modified except in writing.

Buyer

Seller

- 5/13 -

Dec 19 07 09:49a     Craig Basaraba        250-483-4717        p.6
Mar 31 06 08:03a     Craig Basaraba        250-483-4717        p.7
Mar 30 06 04:59p     Blackfold Illustrated     5742553780     p.7

15.   Materiality.  All provisions of this Agreement shall be deemed to be material provisions of this Agreement.

16.   Counterparts.  This Agreement may be executed in counterparts, to include facsimile counterparts, each of which will be deemed an original, but both of which together will constitute one and the same instrument.

17.   Effective Date.  This Agreement becomes effective when executed by both parties.  The parties agree to execute all documents and take all further actions reasonably necessary to accomplish the provisions of this Agreement.


Buyer

Seller

- 5/13 -

Dec 19 07 09:49a     Craig Jasaraba        250-483-4717        p.7
Mar 31 06 08:03a     Craig Jasaraba        250-483-4717        p.8
Mar 30 06 04:58p     Blacksold Illustrated  5742553200        p.8

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates listed below.

Razoreye Media Group, Ltd.          Fan Action, Inc.
4152 Meridian St. PMB#105-435        1805 N. Home Street
Bellingham, WA 98226                 Mishawaka, IN 46545

By: _____          By: _____

Name: D. Craig Basaraba              Name: Bob Fith
Title: Director of Operations         Title: President

Date: ____ 30/____                    Date: _____

- 203 -

Dec 19 07 09:50a    Craig    araba        250-489-         p.8
Mar 31 06 08:03a    Craig Basaraba        250-489-4717      p.9
Mar 30 06 05:00p    Blueteele Illustrated    5742558700.    p.9

## ASSIGNMENT OF WORKS

Razoreye Media Group, Ltd. ("Assignor") assigns and conveys to Fan Action, Inc. ("Assignee"), all worldwide right, title and interest in and to certain works created, invented, conceived, reduced to practice, authored, developed or delivered by Assignor either solely or jointly with others, with respect to the website, software development, design work, engineering work and/or computer software characters, artwork, programs and documentation known as IrishToday.com and the assets (including the domain name) of IrishToday.com (the "Work Product") or related to the project as described in the attached Exhibit A and any modifications, amendments, translations, upgrades, updates, enhancements, derivative works and any other changes in or amended to the Work Product, including worldwide trademark, copyright, trade secret, patent and all other proprietary rights (collectively, the "Works"). Assignor shall provide Assignee with all materials or information prepared by Assignor related to the Work Product retaining no copies thereof without the prior written consent of Assignee.

Assignee shall have the right to use the whole of the Works, any part or parts thereof, as Assignee sees fit, subject to the limitation that Assignee must make reasonable efforts to maintain the marketability and profitability therein. Assignee may alter the Works, add to them, or combine them with any other work or works at its sole discretion, also subject to the aforementioned limitation. Notwithstanding the foregoing, all original material created in whole or part by Assignor as part of the Works or as part of the process of creating the Works, including but not limited to designs, drawings, models, prototypes, programs, listings, printouts, documentation, notes, flow charts, and programming aids, shall be the property of Assignee whether or not Assignee uses such material. No rights in the Works are reserved by Assignor.

All programs, specifications, documentation and all other technical information prepared in whole or in part by Assignor in connection with the Works is, will become and will remain Assignee's sole property.

Assignor agrees that it will not seek, and that it will require its employees, agents and representatives to not seek any form of intellectual property protection for any rights in any of the Works. Assignor irrevocably waives its moral rights in the Works. Assignor shall have no rights and shall not communicate to any third party the nature of or details relating to the Works. Assignor agrees that it shall do, and that it will require its employees, agents and representatives (if any) to do, at Assignee's expense, any and all acts, and shall execute any and all instruments which Assignee may reasonably request, to vest in Assignee or its nominees ownership of all Works.

Assignor:

Razoreye Media Group, Ltd.
4152 Meridian Street PMB #105 ~ 435
Bellingham, WA 98226

Date: _Mar 30 /06_

By: _____
Craig Basaraba, Director of Operations
Razoreye Media Group, Ltd.

Assignee:

Fan Action, Inc.
1605 N. Home Street
Mishawaka, IN 46545

Date: _____

By: _____
Bob Firth
Fan Action, Inc.

Buyer
Seller

Dec 19 07 09:51a    Craig    Araba    250-483-4    p.9
Mar 31 06 08:03a    Craig Basaraba    250-483-4717    P.10
Mar 30 06 05:00p    Bluegold Illustrated    5742558700    P-10

## TRANSFER AND ASSIGNMENT OF TRADEMARK

This Transfer and Assignment of Trademark (this "Assignment") is made and entered into as of March 30, 2006, by and between Razoreye Media Group, Ltd. ("Assignor") and Fan Action, Inc. ("Assignee").

WHEREAS, the Assignor has adopted, used, is using and is the owner of the following trademark:

| Trademark | Date of First Use |
|-----------|-------------------|
| IrishToday.com | May 2, 2002 |

WHEREAS, Fan Action, Inc. is desirous of acquiring said trademark;

NOW THEREFORE, in exchange for good and valuable consideration, the receipt of which is hereby acknowledged, Assignor hereby assigns to Fan Action, Inc., all right, title and interest in the United States in and to said trademark, together and with the goodwill of the business symbolized by said trademark.

Signed this 30th day of March, 2006.

Razoreye Media Group, Ltd.             Fan Action, Inc.
4152 Meridian St. PMB #105 - 435        1605 N. Home Street
Bellingham, WA 98226                    Mishawaka, IN 46542

By: _____                    By: _____

Name: D. Craig Basaraba                 Name: Bob Firth

Title: Director of Operations           Title: President

Dec 19 07 09:51a    Craig    araba         250-483-    p.10

Mar 31 06 08:04a    Craig Basaraba        250-483-4717        P. 11
    Mar 30 06 05:90p    SteelGold Illustrated    5742555700        P. 11

## EXHIBIT A

**Name:** IrishToday.com, located at www.IrishToday.com (hereinafter, the "Assets" and/or the "Business")

**Description of Assets:** IrishToday.com is an email newsletter that features Notre Dame Football and recruiting news. It is a subscription-based service that provides 3 weekly publications during the off-season, and 5 weekly publications during regular seasonal play. Annual subscriptions are billed to credit card for $99.95, and monthly subscriptions are billed to credit card in recurring payments of $14.95. The publication contains articles written by former coaches, players, and sports reporters who submit regular writings on a contract basis.

The Assets of the Business include:

1. The domain name www.IrishToday.com, and all domain names set forth on the attached listing of domain names (EXHIBIT B);
2. The trade name "IrishToday.com" as well as the trade names and goodwill associated with the domain name www.IrishToday.com; All logos, graphics and headers relating to IrishToday.com, to include logos, graphics and headers used in the Irish Today newsletter, the Irish Lite newsletter, landing pages and merchant accounts;
3. All merchant accounts relating to the Business existing with 2checkout.com (versions 1 and 2) and all records relating to payments and payment history from subscribers and to vendors;
4. The pdf premium entitled "Fighting Irish Football History Quick Guide";
5. Complete list of current and past/expired subscribers, including HTML and text subscribers, of Irish Today and Irish Lite including credit card and billing information;
6. Complete list and contact information for existing marketing partners of IrishToday.com;
7. Complete archive of previous issues of Irish Today and Irish Lite;
8. HTML files and text templates residing on the www.IrishToday.com webserver, to include any and all HTML files and text templates used for Irish Today and Irish Lite;
9. Photography taken by free lance photographers in 2005;
10. All trademark and trade name rights that Seller owns in the name IrishToday.com or the website www.IrishToday.com, regardless of whether any such mark is filed with any governmental trademark registry.

Razoreye Media Group, Ltd.    Fan Action, Inc.
4152 Meridian St. PMB #105 - 435    1805 N. Horne Street
Bellingham, WA 98226    Mishawaka, IN 46545

By: _____    By: _____

Name: D. Craig Basaraba    Name: Bob Firth
Title: Director of Operations    Title: President

Date: March 30/06    Date: _____    Buyer

                                                           Seller

- 1013 -

Dec 18 07 09:51a    Craig    Araba              250-483-4          P.11
Mar 31 06 09:05a    Craig Basaraba             250-483-4717        P.12
Mar 30 06 05:01p    Riverheads Illustrated     5742559200          P.12

EXHIBIT B

**Football Div 1A**

| Nickname | College | Domain |
| --- | --- | --- |
| Aggies | Texas A&M | aggiesnow.com |
| Falcons | Air Force | airforcetoday.com |
| Black Knights | Army | armytoday.com |
| Tigers | Auburn | auburntigerstoday.com |
| Aztecs | San Diego St. | aztecstoday.com |
| Badgers | Wisconsin | badgerstoday.com |
| Cardinals | Ball St. | ballstatetoday.com |
| Bears | Baylor | baylortoday.com |
| Bearcats | Cincinnati | bearcatstoday.com |
| Golden Bears | California | goldenbearstoday.com |
| Beavers | Oregon St. | beaverstoday.com |
| Blazers | UAB | blazerstoday.com |
| Blue Devils | Duke | bluedevilstoday.com |
| Bobcats | Ohio | bobcatstoday.com |
| Boilermakers | Purdue | boilermakerstoday.com |
| Broncos | Boise State | Bsutoday.com |
| Bruins | UCLA | bruinstoday.com |
| Buckeyes | Ohio State | buckeyesnow.com |
| Buffaloes | Colorado | buffaloestoday.com |
| Bulldogs | Georgia | bulldogstoday.com |
| Bulls | South Florida | bullstoday.com |
| Cougars | BYU | Byutoday.com |
| Rajin Cajuns | Louisiana Lafayette | cajunstoday.com |
| Cardinals | Louisville | cardinalstoday.com |
| Cardinal | Stanford | cardinaltoday.com |
| Cavaliers | Virginia | cavalierstoday.com |
| Chippewas | Central Michigan | chippewastoday.com |
| Commodores | Vanderbilt | commodorestoday.com |
| Cougars | Washington State | cougarstoday.com |
| Cowboys | Oklahoma State | cowboystoday.com |
| Cyclones | Iowa State | cyclonestoday.com |
| Demon Deacons | Wake Forest | deaconstoday.com |
| Ducks | Oregon | duckstoday.com |
| Eagles | Boston College | eaglestoday.com |
| Falcons | Bowling Green | falconstoday.com |
| Golden Flashes | Kent State | flashestoday.com |
| Horned Frogs | TCU | frogstoday.com |
| Bulldogs | Fresno State | fsutoday.com |
| Gamecocks | South Carolina | gamecockstoday.com |
| Gators | Florida | gatorstoday.com |
| Golden Eagles | Southern Miss | goldeneaglestoday.com |

_____ Buyer

_____ Seller

Dec 18 07 09:52a    Craig    araba    250-483-A    p.12
Mar 31 08 08:05a    Craig Basaraba    250-483-#717    p.13
Mar 30 08 05:01p    Blue&Gold Illustrated    5742555700    p.13

| | | |
|---|---|---|
| Golden Gophers | Minnesota | gopherstoday.com |
| Hawkeyes | Iowa | hawkeyestoday.com |
| Thundering Herd | Marshall | herdtoday.com |
| Hokies | Virginia Tech | hokiestoday.com |
| Hoosiers | Indiana | hoosierstoday.com |
| Hurricanes | Miami | hurricanestoday.com |
| Corn Huskers | Nebraska | huskerstoday.com |
| Huskies | Washington | huskiestoday.com |
| Cougars | Houston | hubday.com |
| Fighting Illini | Illinois | illinitoday.com |
| Indians | Arkansas State | indianstoday.com |
| Jayhawks | Kansas | jayhawkstoday.com |
| Scarlet Knights | Rutgers | knightstoday.com |
| Wildcats | Kansas State | ksutoday.com |
| Nittany Lions | Penn State | lionstoday.com |
| Lobos | New Mexico | lobostoday.com |
| Longhorns | Texas | longhornstoday.com |
| Bulldogs | Louisiana Tech | lutoday.com |
| Mean Green | North Texas | meangreentoday.com |
| Midshipmen | Navy | midshipmentoday.com |
| Miners | UTEP | minerstoday.com |
| Tigers | Missouri | mizzoutoday.com |
| Mountaineers | West Virginia | mountaineerstoday.com |
| Bulldogs | Miss St. | msubulldogstoday.com |
| Mustangs | SMU | mustangstoday.com |
| Tigers | Memphis | mutigerstoday.com |
| Huskies | Northern Illinois | niutoday.com |
| Aggies | New Mexico State | nmstatetoday.com |
| Wildcats | Northwestern | nwutoday.com |
| Rebels | Ole Miss | olemisstoday.com |
| Owls | Temple | owlstoday.com |
| Wolf Pack | Nevada | wolfpacktoday.com |
| Panthers | Pittsburgh | pantherstoday.com |
| Pirates | East Carolina | piratestoday.com |
| Rams | Colorado State | csutoday.com |
| Razorbacks | Arkansas | razorbackstoday.com |
| Rebels | UNLV | rebelstoday.com |
| Red Hawks | Miami (OH) | redhawkstoday.com |
| Red Raiders | Texas Tech | redraiderstoday.com |
| Owls | Rice | ricetoday.com |
| Rockets | Toledo | rocketstoday.com |
| Seminoles | Florida St. | seminolestoday.com |
| Sooners | Oklahoma | soonerstoday.com |
| Spartans | Michigan St. | spartanstoday.com |
| Sun Devils | Arizona St. | sundevilstoday.com |

Buyer
Seller

- 12/13 -

Dec 19 07 09:52a    Craig    araba              250-483-4        p.13
Mar 31 08 09:05a    Craig Basaraba            250-483-4717       p.14
    Mar 30 08 05:01p    BlueGold Illustrated     5742558700       p.14

| | | |
|---|---|---|
| Orange | Syracuse | suorangetoday.com |
| Tar Heels | North Carolina | tarheelstoday.com |
| Terrapins | Maryland | terrapinstoday.com |
| Crimson Tide | Alabama | tidetoday.com |
| Tigers | Clemson | tigerstoday.com |
| Tigers | LSU | tigerstoday.com |
| Trojans | USC | trojanstoday.com |
| Trojans | Troy St. | troystatetoday.com |
| Golden Knights | UCF | ucftoday.com |
| Huskies | Connecticut | uconntoday.com |
| Wildcats | Kentucky | ukwildcatstoday.com |
| Eagles | Eastern Michigan | umutoday.com |
| Aggies | Utah State | utahstatetoday.com |
| Utes | Utah | utestoday.com |
| Vandals | Idaho | vandalstoday.com |
| Volunteers | Tennessee | volunteerstoday.com |
| Warriors | Hawaii | warriorstoday.com |
| Green Waves | Tulane | wavestoday.com |
| Wildcats | Arizona | wildcatstoday.com |
| Broncos | Western Michigan | wmutoday.com |
| Wolfpack | NC State | ncstatetoday.com |
| Wolverines | Michigan | wolverinestoday.com |
| Cowboys | Wyoming | wyocowboystoday.com |
| Yellow Jackets | Georgia Tech | yellowjacketstoday.com |
| Zips | Akron | zipstoday.com |

Buyer
Seller